1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELE T.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:20-cv-06085-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 3. This matter has been fully briefed. *See* Dkts.23, 34, 38.

      Plaintiff suffers from diabetic neuropathy which causes numbness in her feet. The ALJ found the opinion of her longtime treating physician on plaintiff's limitations was inconsistent with objective medical evidence, including the findings of a treating neurologist. Because

1  substantial evidence supports the ALJ's finding, and because plaintiff has not shown any

2  constitutional defect in the decision, the Court affirms.

3  <u>PROCEDURAL HISTORY</u>

4  Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. §

5  423 (Title II of the Social Security Act) was denied initially and following reconsideration. *See*

6  AR 75, 83. Plaintiff's requested hearing was held before Administrative Law Judge Allen G.

7  Erickson ("the ALJ") on February 6, 2020. *See* AR 38–74. On February 18, 2020, the ALJ issued

8  a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the

9  Social Security Act. *See* AR.20–36.

10  On September 10, 2020, the Appeals Council denied plaintiff's request for review,

11  making the written decision by the ALJ the final agency decision subject to judicial review.  AR.

12  1; *see* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the

13  ALJ's written decision in November 2020. *See* Dkt. 1. Defendant filed the sealed administrative

14  record regarding this matter ("AR.") on May 12, 2021. *See* Dkt. 15.

15  <u>BACKGROUND</u>

16  Plaintiff was born in 1962 and was 55 years old on the alleged date of disability onset of

17  December 21, 2017. *See* AR 218. Plaintiff has past work experience as a cashier checker, but

18  quit due to foot pain that prevented her from standing for long periods. AR 48.

19  According to the ALJ, plaintiff has at least the severe impairment of diabetic neuropathy.

20  AR 25.

21  <u>STANDARD OF REVIEW</u>

22  Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

23  social security benefits if the ALJ's findings are based on legal error or not supported by

24

1 │ substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

2 │ Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

3 │ <u>DISCUSSION</u>

4 │      In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) whether the ALJ

5 │ erred in evaluating the medical opinion evidence; and (2) whether the ALJ's decision was

6 │ constitutionally defective, because the statute governing the Commissioner's appointment and

7 │ tenure violated the Constitution's separation of powers. *See* Dkt. 23, p. 1.

8 │      <u>1. Whether the ALJ Erred in Evaluating the Medical Opinion Evidence</u>

9 │      Plaintiff assigns error to the ALJ's evaluation of an opinion from John C. Bausher, M.D.,

10 │ Ph.D. *See* Dkt. 23, p. 8.

11 │      A.  <u>Medical Opinion Standard of Review</u>

12 │      The Ninth Circuit has held that deference is due to a treating or examining doctor's

13 │ opinion and that if an ALJ rejects such an opinion and the opinion is contradicted by another

14 │ doctor's opinion, the "ALJ may only reject it by providing specific and legitimate reasons that

15 │ are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

16 │ For applications beginning March 27, 2017, however, the Administration has directed ALJs that

17 │ they are no longer to defer to medical opinions from treating or examining sources (*see* 20

18 │ C.F.R. § 404.1527(c)), instead evaluating the persuasiveness of medical opinions by analyzing

19 │ their "supportability" and "consistency," as well as other appropriate factors. 20 C.F.R. §

20 │ 404.1520c(a). Because plaintiff's claim was filed in December 2017, the new regulations apply

21 │ to the instant case.

22 │      This Court—and others—have concluded that the new regulations supplant judicial

23 │ precedent regarding the weight given to controverted examining and treating source opinions, to

24 │

1    the extent that there is a conflict. *See* Dkt. 20, *Mooney v. Commissioner of Social Security*, 3:19-

2    cv-05103-RBL-JRC, (W.D. Wash. Feb 14, 2020), *report and recommendation adopted*, 2020

3    WL 1139765; *Martinson v. Commissioner of Social Security*, 3:20-cv-05149-JRC (W.D. Wash.

4    August 25, 2020); *see also Gretchen S. v. Saul*, No. 6:19-CV-01842-IM, 2020 WL 6076265, at

5    *4 (D. Or. Oct. 15, 2020) (ruling that the broad authority conferred on the Administration by 42

6    U.S.C. § 405 means that prior judicial precedent must yield in the face of new, permissible

7    regulations and that "[a]s such, the 2017 regulations apply here and displace any case law

8    precedent to the extent required to do so."), *appeal filed* December 6, 2020; *see also Allen T. v.*

9    *Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020) ("[T]he Court

10   is mindful that it must defer to the new regulations, even where they conflict with prior judicial

11   precedent. . . .").

12          Nevertheless, the Court makes no ruling in this case about whether the specific and

13   legitimate standard of review continues to apply. Resolution of this issue is not necessary to

14   decide this case: regardless of the outcome of this issue, the Court must review whether the

15   ALJ's decision is supported by substantial evidence and is free from legal error. *See Lambert v.*

16   *Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). That is, the ALJ "must provide sufficient reasoning

17   that allows us to perform our own review, because the grounds upon which an administrative

18   order must be judged are those upon which the record discloses that its action was based." *Id.*

19   (internal citations and quotations omitted). Applying this standard—and regardless of the

20   continued viability of the requirement that an ALJ provide specific and legitimate reasons to

21   reject a controverted treating doctor's opinion—the Court concludes that the ALJ's findings

22   were supported by substantial evidence.

23

24

B. Opinion of John C. Bausher, M.D., Ph.D.

Dr. Bausher, plaintiff's treating physician for 31 years, completed a physical functional assessment form on December 27, 2019, offering his opinion on plaintiff's physical limitations. *See* AR 468–70. Therein, he indicated that plaintiff could sit for no more than one hour at a time and stand for no more than 30 minutes at a time; could sit for a total of two hours, and stand or walk for less than two hours, of an eight-hour workday; would need to take unscheduled breaks "every hour or less" during the workday; and could be expected to be off-task for 30% of the workday. AR 468, 470. In addition, he indicated that plaintiff could never lift loads greater than ten pounds, and could rarely lift loads less than that; and that plaintiff would have significant limitations with reaching, handling, and fingering, being able to handle 30% of the time bilaterally, finger 40% of the time with her left hand, and 30% of the time with her right; and could reach in front 30% of the time and 10% of the time overhead with either arm. AR 469.

The ALJ found Dr. Bausher's opinion unpersuasive by virtue of its inconsistency with (1) his own physical examination notes; (2) the findings of plaintiff's treating neurologist; and (3) plaintiff's self-reports indicating she had no upper extremity issues and did not have neuropathy in her hands. AR 30.

With respect to this second reason, when conflicting medical evidence is present, the ALJ is charged with determining credibility and resolving any conflicts. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Here, the ALJ found that Dr. Bausher's opinion was inconsistent with Dr. Miller's clinical findings of intact muscle strength, tone and bulk, stable gait without ataxia, intact reflexes, and no evidence of limb or truncal ataxia. AR 30 (citing AR 403–04). In arguing against the ALJ's finding, plaintiff notes that Dr. Miller credited plaintiff's complaint of numbness in her feet. Dkt. 23, p. 12. The ALJ, however, specifically accounted for these

1  complaints of foot numbness in plaintiff's RFC determination, but still found that this ailment

2  did not cause the extent of limitations opined by Dr. Bausher.

3  It is not unusual for different health professionals to reach different conclusions. The ALJ

4  is the one who must choose between these conclusions and provide specific and legitimate

5  reasons of doing so.  The ALJ did so here. Substantial evidence supported the ALJ's conclusion

6  that plaintiff's overall presentation and performance on physical examinations, particularly

7  before Dr. Miller, showed her health to be in a better state than that which the limitations

8  assessed by Dr. Bausher would indicate. *See* 20 C.F.R. §§ 404.1520c(c)(2) ("The more

9  consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence

10  from other medical sources or nonmedical sources in the claim, the more persuasive the medical

11  opinion(s) or prior administrative medical finding(s) will be."). The Court has reviewed the

12  records relied upon by the ALJ and determined that they meet the substantial evidence standard.

13  Although the ALJ provided additional reasons for discounting Dr. Bausher's opinion, the

14  Court need not assess whether these reasons were proper, as any error would be harmless. *See*

15  *Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944–45 (9th Cir. 2017) (citing *Carmickle v.*

16  *Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred

17  on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ

18  gave a reason supported by the record" to discount the opinion).

19  <u>2. Whether the ALJ's Decision was Constitutionally Valid</u>

20  Next, plaintiff asserts that the ALJ's decision was constitutionally defective, because

21  recent Supreme Court decisions call into question the constitutionality of a statute limiting the

22  President's removal power over the Commissioner of Social Security. Dkt. 23, p. 4.

23

24

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3). Under § 902(a)(3), the Commissioner may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* Plaintiff contends § 902(a)(3) violates separation of powers under Article II of the United States Constitution, and therefore the Commissioner's final decision denying Plaintiff benefits was made by individuals who lacked valid delegated authority to make the decision. Dkt. 23 at 4; Dkt. 38 at 3. Plaintiff's argument relies upon the Supreme Court decisions in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021).

In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure limiting the removal of the CFPB Director by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated separation of powers. *Seila Law*, 140 S. Ct. at 2197. In *Collins* the Court held a provision limiting the President to removing the Directors of the Federal Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*, 141 S. Ct. at 1783 (holding *"Seila Law* is all but dispositive").

A straightforward application of *Seila Law* and *Collins* dictates a finding that § 902(a)(3)'s removal provision violates separation of powers. As in *Seila Law* and *Collins*, the Social Security Commissioner is a single officer at the head of an administrative agency and removable only for cause. *See* 42 U.S.C. § 902(a)(3). Section 902 thus has the same infirmity as the removal provisions at issue in *Seila Law* and *Collins*. The Court accordingly concludes § 902(a)(3) violates separation of powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783.

In her reply brief, plaintiff suggests § 902 may be constitutional because "in *dicta*, the *Seila Law* court questioned whether § 902(a)(3) was unconstitutional." Dkt. 29 at 8. The *Seila Law* Court noted differences between the SSA and CFPB but did not find the differences rendered § 902(a)(3) constitutional or rendered CFPB's removal limitation unconstitutional. *See Seila Law*, 140 S. Ct. at 2202. The *Collins* Court clarified that "[c]ourts are not well-suited to weigh the relative importance of the regulatory and enforcement authority of disparate agencies, and we do not think that the constitutionality of removal restrictions hinges on such an inquiry." 141 S. Ct. at 1785. This clarification precludes the possibility § 902(a)(3) is constitutional based upon *dicta* in *Seila Law*.

Having concluded §902(a)(3)'s removal provision violates separation of powers, the Court turns to the parties' dispute over the proper remedy. Plaintiff contends under *Seila Law* and *Collins*, the remedy is reversal because the § 902's removal clause renders the Social Security Administration's structure unconstitutional, and "the Commissioner had no authority to delegate leaving the ALJ here and the Appeals Council without any authority . . . to make findings of fact and issue decision as to benefits eligibility." Dkt. 23 at 6. In her reply brief, Plaintiff amplifies this argument arguing Presidential power over an agency is "like water flowing" and § 902(a)(3)'s infirm removal clause "stops the flow of authority such that the Commissioner and inferior officers below do not have delegated authority." Dkt. 38 at 6.

Plaintiff's argument is similar to arguments the plaintiffs raised and the Court rejected in *Seila Law* and *Collins*. First, like the plaintiffs in *Seila Law*, plaintiff here argues § 902(a)(3)'s removal provision automatically renders all agency action unconstitutional. The Court in *Seila Law* rejected such an argument observing one section of a statute may violate the Constitution without rendering the entire act void. *Seila Law*, 140 S. Ct. at 2209. The Court stated the removal

1    limitation of the CFPB Director is the only defect and removal of the defect removes the

2    constitutional violation. The Court concluded the removal limitation was severable because the

3    CFPB is capable of functioning independently of the infirm removal clause. *Id.* at 2209 ("The

4    provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully

5    operative without the offending tenure restriction. Those provisions are capable of functioning

6    independently, and there is nothing in the text or history of the Dodd-Frank Act that

7    demonstrates Congress would have preferred no CFPB to a CFPB supervised by the President.");

8    *see also* 140 S. Ct. at 2245.2

9        Similarly, if the removal clause in § 902(a)(3) is severed, the SSA remains fully

10   functional. This is evident because there can be no dispute that since the promulgation of §

11   902(a)(3), the SSA has continued to function fully and has granted and denied thousands of

12   benefits applications. It should be noted that the Administration continues to function even if the

13   Commissioner's position is temporarily unfilled or delegated to an acting Commissioner.  It

14   would be unrealistic to imagine that the work of the entire Administration suddenly stops

15   whenever the Commissioner is unavailable, or the position is temporarily vacated for any reason.

16   The work of the Administration must go on.  Indeed, plaintiff 's suggestion that there is no need

17   to "unwind favorable decisions" made by the SSA notwithstanding § 902(a)(3) infirm removal

18   clause, supports this conclusion. Dkt. 38 at 8. The Court concludes, just as the Court in *Seila Law*

19   found, that § 902(a)(3)'s removal clause is the only constitutional defect in this case. The clause

20   is severable because if removed the constitutional violation disappears, and the SSA remains

21   fully operational and functional without the infirm tenure provision.

22       The Supreme Court in *Collins* also rejected the argument that an invalid removal

23   provision rendered the FHFA's actions void from the outset. The Supreme Court stated there was

24

"no reason to hold that the third amendment must be completely undone." *Collins, supra.* at 1788. The *Collins* Court further stated "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void."). *Collins*, at 1787. Accordingly, the argument the SSA's actions here are either void *ab initio* or became void at some later point due to § 902(a)(3)'s removal clause is not supported by either *Seila Law* or *Collins*.

While the Supreme Court in both *Seila Law* and *Collins* held an unconstitutional removal clause does not automatically void agency action and mandate reversal, the Court in *Collins* addressed whether reversal is appropriate if harm could be shown. The *Collins* Court found it was "possible for an unconstitutional provision to inflict compensable harm," and the "possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out." 141 S. Ct. at 1788–89.

In her reply brief, plaintiff argues "[Commissioner] Saul's actions, under constitutional authority or not, have caused specific harm by undermining, politicizing and reducing due process protections to Plaintiff's claims." Dkt. 38 at 4. This argument that there is a possibility § 902(a)(3) harmed plaintiff fails to recognize the significant difference between the agency action in *Collins* and the SSA action here.

In *Collins*, the Directors of the FHFA adopted an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior

1    form of the agreements. *Id.* at 1774. The plaintiffs in *Collins* thus had an identifiable basis to

2    contend that but for the unconstitutional removal provision, the President may have removed and

3    appointed a different Director who would have disapproved of the adoption (or implementation)

4    of the Third Amendment. *See id.* at 1789.

5            In contrast, there is nothing showing the Commissioner or the SSA implemented new and

6    relevant agency action that may have turned upon the President's inability to remove the

7    Commissioner. Plaintiff has not identified any new regulations, agency policies or directives

8    Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how

9    or why § 902(a)(3) removal clause possibly harmed her.

10           There is also nothing showing former President Trump would have removed

11    Commissioner Saul and appointed a new Commissioner who would have administered this

12    plaintiff's claims differently. Rather, former President Trump appointed Commissioner Saul, and

13    was still in office on February 18, 2020, when the ALJ's decision that plaintiff challenges was

14    issued. *See* AR 20–36. This remained the case on September 10, 2020, when the Appeals

15    Council issued its decision denying plaintiff's request for review. AR 1–6. Thus, plaintiff's

16    argument that the "efforts of the Appeals Council to exhaust Plaintiff's administrative remedies

17    lack any presidential authority" is unsupported. Dkt. 38, p. 7. Accordingly, because there is no

18    evidence that the former president sought to remove Commissioner Saul, there is no connection

19    between § 902(a)(3)'s removal clause and possible harm the removal clause might have caused

20    plaintiff. *Cf. Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[G]iven the majority's remedial

21    analysis, I doubt the mass of SSA decisions—which would not concern the President at all—

22    would need to be undone. . . . When an agency decision would not capture a President's

23    attention, his removal authority could not make a difference.").

24

1    Even assuming §902(a)(3)'s removal clause prevented former President Trump from

2    removing Commissioner Saul and confirming a different Commissioner, there is no possibility §

3    902(a)(3) harmed plaintiff, because the final decision of the Commissioner that is before this

4    Court for review is the ALJ's decision. The ALJ's decision in this case is based upon an

5    uncontested factual record and the application of governing law, including unchallenged

6    regulations. The ALJ's decision and the administrative record are both subject to review by this

7    Court. The specific Commissioner who heads the SSA or any directive the Commissioner gave

8    regarding plaintiff's case would not alter the viability of the ALJ's decision herein. This is

9    because the Court has reviewed the record and the ALJ's decision at issue and concludes that the

10   ALJ did not err, and that the case should be affirmed for these reasons. Had the Court found

11   otherwise and determined that the ALJ's decision was not supported by substantial evidence or

12   free of legal error, the Court would have reversed the Commissioner's final decision. Hence, the

13   Court reaches its decision to reverse or affirm the Commissioner's final decision notwithstanding

14   the existence of § 902(a)(3)'s removal clause, who the Commissioner was at the time the

15   decision became final, or what directives the Commissioner may have given the ALJ. The Court

16   thus concludes that there is no possibility § 902(a)(3)'s removal clause harmed plaintiff in this

17   case.

18    Plaintiff also mentions, in her reply brief, that the Commissioner's actions reduced "due

19   process protections." Dkt. 38, p. 4. *Seila Law* and *Collins* addressed infirm removal provisions

20   that the Court found violate separation of powers, not due process; these cases thus provide no

21   basis to support a due process claim. Additionally, a conclusory allegation that due process was

22   denied is not sufficient to raise a colorable constitutional claim. *See e.g. Hoye v. Sullivan,* 985

23   F.2d 990, 992 (9th Cir. 1992).

24

1        In sum, the Court finds § 902(a)(3)'s unconstitutional removal clause does not

2   automatically void the actions of the SSA or the Commissioner's final decision in this case.

3   Reversal is not mandated under *Seila Law* or *Collins* because § 902(a)(3)'s removal clause is

4   severable, and because there is no possibility § 902(a)(3)'s removal clause harmed Plaintiff.

5   Based upon the Court's review of the administrative record and the ALJ's decision the Court

6   finds the ALJ did not err in discounting Dr. Bausher's opinion. This finding is not contingent

7   upon or affected by § 902(a)(3) and Plaintiff thus fails to show the removal provision in §

8   902(a)(3) is connected to the ALJ's decision denying her benefits. *See Decker Coal Co. v.*

9   *Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision

10  awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands

11  us to vacate the decisions below on that ground.")).

12       The Court accordingly concludes that while § 902(a)(3) violates separation of powers, the

13  violation is not grounds to reverse the Commissioner's final decision and remand the matter in

14  this case. Rather, the basis of the Court's determination to reverse the Commissioner's final

15  decision is the Court's independent review of the administrative record and the ALJ's decision,

16  and the Court's conclusion the ALJ did not err.

17  <u>CONCLUSION</u>

18       Based on these reasons and the relevant record, the Court **ORDERS** that this matter be

19  **AFFIRMED.**

20       **JUDGMENT** is for the defendant and the case is closed.

21       Dated this 17th day of November, 2021.

22

23  
                                      J. Richard Creatura

24                                        Chief United States Magistrate Judge